I represent the United States. With the court's permission, I'd like to reserve two minutes for rebuttal. Yes, you may have that. Are you from Justice or from the local office in Maine? I'm from the United States Attorney's Office for the District of Maine. All right. I have a question for you. I understand why the government wanted to introduce the phone call with the mother, in which Mr. Aiken said, wasn't my room, wasn't my drugs. Fine. That's an admission against interest. It helps you in this case. But why did the government introduce the second phone call in which he says, I spent the night in the room, which is the key element of his case? What was the government thinking of, and why is that admissible? It's not an admission against interest. It helps him. Yes, Your Honor. I would agree that we possibly did a little bit of the defendant's work for him by introducing that phone call. Yes, you did a great deal of the defendant's work for him. There were other statements within that call that were beneficial to the government. The second call? The second call. There were additional statements that it was not his room, and I think that was... Hadn't he established that in the first call? Yes, Your Honor. Yes, and I think that, I think in hindsight, probably we did ourselves a disservice by introducing the second phone call. Well, you've created a case for the Court of Appeals. Yes, Your Honor. Notwithstanding that fact, I don't think that the defendant's statements in that call, that he spent the night in the room, are in any way sufficient to meet his burden, to show reasonable expectation of privacy. The courts have been... Is there anything else in the record from the defendant himself as to why he was in the room? As I understand the record, there is nothing other than that statement that's in that phone call. That's correct, Your Honor. The defendant introduced absolutely zero evidence of his own reason for being in the room, how long he was in the room, how long he slept in the room. There's really nothing to show the nature of his relationship with Mr. Bonnet or Mr. Brown. And so, yes, this case really turns on... Is the defendant's statement that he spent the night in the room sufficient to meet his standing burden? So, following up on Judge Lynch's question, if you had not introduced that second call, there would have been zero in this record. That's correct, Your Honor. But you did. Yes, we did. And notwithstanding that fact, that statement by the defendant is not sufficient here to meet his burden. Okay, let's be clear about this. The legal issue that the defendant has teed up, and apparently the district court judge adopted, is it is enough to give you a reasonable expectation of privacy that you have spent the night in a motel room with someone else who may have a reasonable expectation of privacy? And that's all it takes, right? Correct. Isn't that your opponent's argument? Yes, I would agree that's... And the First Circuit hasn't really come down one way or the other on that. Some circuits, like the Tenth, have an absolute rule, no, that's not enough. And other circuits, like the Ninth, seem to think that that's enough. So what criteria does the government urge on us? I think that there are two cases that are suggestive here of how the court might handle this. The first is Irizarry, which is a First Circuit decision. That was a late-night entry into a hotel room. The defendant was present, but he was not the registered occupant. There was no evidence submitted by the defendant in that case to show his reason for being there, or whether he had a subjective expectation of privacy. Okay, so you think we should consider the reason for being there? I take it implicitly you're saying nearly the fact that you're an overnight guest, that you spent the night there, isn't enough, that you would look at reasons. So what do we make of that? Well, I think other courts have done that. For example, the Cooper case from the Eleventh Circuit. There were defendants in that case who were not the registered occupants. They had access to the room. I'm sorry, you're not answering the question. I'm sorry. Whether or not he's registered may or may not be a pertinent factor. I'm asking about the defendant's reasons for being in that room. Yes, I think when the defendant is not the primary occupant of the room, then there has to be some evidence of his purpose for being there. You have to show, was I there for a commercial purpose? Was I there for a personal purpose? Was it a social visit? Those are the things that the Supreme Court has said are important to consider in determining whether a guest, and in this case a guest of a guest, has a reasonable expectation of privacy. Suppose he was there for any of those reasons you just articulated. Is one reason better than the next? Yes. The Supreme Court case law is clear that if you are there primarily for a commercial purpose, that you do not have the same expectation of privacy. That's Minnesota versus Carter. Whereas if you are there as a social guest and you're staying overnight, that's Minnesota versus Olson. Suppose you're there for a commercial, as a commercial guest with an overnight stay. Well, that was the Cooper case, and there the defendants offered no evidence, and the court in footnote three said even if they were overnight guests, they were there primarily to engage in drug trafficking, and that's not sufficient to convey a reasonable expectation of privacy. When you get all through with this, doesn't it come back to the burden question that in a sense we began with? It's his burden to show that he had a reasonable expectation of privacy in the room, and without any evidence of that, isn't that sufficient for him to lose in this case? Yes, that's precisely our position, that he in no way met his burden, and even Mr. Does this require us to hold that merely staying overnight in a hotel room, I'm reluctant to use the word guest because there's just no evidence. He stayed there sort of with the permission of the other person, who knows who asked him to stay there. Does it require us to make a ruling on a sort of mere presence overnight is not enough? I don't think so, Your Honor. I think the court can say that in this case, on this record, the reason that he was there overnight is unclear, and therefore he did not meet his burden. Okay, so what do we do with the statement of the other person in the room about the package of cocaine that was underneath the scale that we should have put it in another place as we did last time? Yes, I think that's a very important statement, because I think that's the only evidence in the record that shows the nature of the relationship between these two men, and it suggests that that relationship was one predicated around drug trafficking, and that's a commercial purpose, that's not a social purpose, and therefore I think with respect to that evidence, you can also find that the reasonable expectation of privacy is not there. You think the we clearly refers to Aiken and not the guy who registered the room? I think in context it doesn't make sense for the we to refer to anyone other than Aiken and Bonnet. Okay. Thank you. Good morning. I'm Vivian Shevitz. I'm appointed to represent Mr. Aiken on this appeal. Now that the government has given you this gift. Yes, yes, but I do not agree that there is no evidence that Mr. Aiken exhibited and maintained an expectation of privacy, even though he did not say I have an expectation of privacy. The major point is he was behind a locked door, and just like in a house or in somebody's house, and he had the authority to be behind the locked door and exclude other people. Why? Because he was staying, apparently, and there's no evidence to the contrary, and I think the circumstances show that. He was staying in a room, and his motion to suppress alleged that, that he was staying in the room as an overnight guest. I think the distinction between guests and guests of the guests is a little strained. Why? Because if you are behind a locked door where you have a right to be in somebody's house, there are cases we cited in our brief that show. What do you mean he had a right to be? We know we're supposed to look at state law or commonly accepted notions. Under the Supreme Court case law, when we talk about the reasonable expectation of privacy, we are referred back to state law. We may be in state law, and if the man was there just to do an illegal drug deal, that's the commercial. Suppose he wanted to smoke dope and help the guy sell cocaine the next morning. Okay. He was sleeping there, and while he's sleeping there. Well, that's unclear, and the other thing which you just indicated, he was behind a closed door. The officers were not attempting to get that door to be opened. They were trying to get a different door to be opened, and they voluntarily opened the door. No, I understand that. I'm not saying that he's behind a locked door to suggest that the cops beat down the door or anything like that. I'm saying that he was, and as I was checking out from my hotel this morning, I just borrowed this to show that it says, privacy, please, for the room. And that's where he was. He was behind a door in a hotel, and it wasn't the only person. Which his colleague voluntarily opened, much to his later regret. The district court did not find any voluntariness. No, no. I'm not getting into the issue of consent. Right. There was no knock by the police on that door. His colleague, out of curiosity or some other reason, opens the door twice. Right? Okay. Fine. All right. That doesn't mean he didn't have an expectation of privacy in the room until they left. The fact that he was a guest, and I have come upon an interesting law review article on that called Do Not Disturb, Fourth Amendment Expectation of Privacy. Okay. Do a Rule 28J letter to the court, please. Sure. I will do that. But the expectation of privacy is the fact that he slept over, and as we cite cases in our brief, the place where you lay your head to go to sleep. But there is no evidence that he, in fact, did that. Your client didn't testify, no affidavit, nothing at all to indicate that he actually was there overnight. Well, he alleged in his motion to suppress. That's not evidence. All right. But the co-defendant did file an affidavit. And didn't mention your client at all. And it was denied. It was described as useless. So the point of filing, and that's what it was, it's described as useless during the case. The government argued that nobody should pay attention to that affidavit of vomit. It would have been so easy for that person to have explained the circumstances under which Aiken is in the room. It would have been so easy for Aiken to have provided evidence as to his purpose to being in the room. Counsel chose not to introduce any evidence, but to argue merely inferences from the evidence the government put in. Well, counsel used the undisputed evidence of the fact that the police went to the room at 9 in the morning, that he looked like he was just getting up, that he was undressed, not getting dressed, that he was, both of them looked like they were getting dressed, and the fact that he had said he was an overnight guest and the hotel believed they were overnight guests. I don't know unless. What do you mean the hotel believed? Well, the hotel checked in two people and they didn't care. The fact that the man was found at the location in cases where affidavits have to be filed, it's because the circumstances, I believe, don't speak to what is happening there. Let's say a man has an office. So we don't know when the police search an office, a big office building, the man whose office it is usually has to write an affidavit that this is where I keep my things, my personal things or my work things besides something else. In this case, the circumstances were not, the circumstance of why he was there during the day, why he got there may have been unclear, but that goes to guilt or innocence. That doesn't go to expectation of privacy of where you sleep. But the burden is on your client. The burden of raising the issue is on my client. No, of proving. It is a burden of coming forward with some evidence. Right. And Judge Levy believed that the evidence of the undisputed evidence that the two men appeared to be waking up, there were surveillance cameras and nobody showed them arriving there in the morning. They had arrived the night before. So they were there found in the room in a state of partial undress where it looked like and everybody thought that they were just getting up for the morning. And when the circumstances show that, the only additional circumstance that the government wants or apparently the court is looking for is did he rent the room? Was he the signer? No. And he was not. What was his purpose in being there? Well, his purpose was sleeping. The police recognized him from a prior drug bust in which he had been a runner. Correct. But he was not charged because there was not enough evidence. But they can still take it into account. Consider that. Absolutely. They can consider that and they can consider that on the issue of whether they. And it's pretty clear this motel is used in Lewiston a lot for drug deals. I understand that. So I've read. But the fact that I'm here in the Omni Parker on the government's, you know, travel voucher, and he's there at a Motel 6, I don't think if one of you took your spouse to something and whoever scheduled the trip just signed you, signed one person in, and you brought somebody, would you, that other person, have less expectation of privacy? Would that other person, your spouse or your friend who came at the last minute say, you don't have the expectation of privacy. He's not my spouse. He's not family. We don't know what the relationship was because you put in no evidence. Prior counsel, excuse me. Right. It was something that I struggled with. But I believe that the circumstances themselves speak of. Well, we know they were close enough to spend an overnight in a motel room together. Yes. Yes. They were close enough to spend the night together. It was not according to Aiken's call to his mother, according to everything else, whether, you know, the government erred in putting in that phone call. They're looking at guilt or innocence. I understand that. What's he doing there in the room and there's drugs there? That's a different question than what's he doing sleeping because the evidence was he didn't get there in the morning. There's no evidence of that. So he said in his moving papers that he was an overnight guest. Isn't it fair to say that there's no evidence really either way as to when he got to the room? Because he doesn't show up on the surveillance camera when the actual registration occurs. Well, the two officers were unclear on that. And I think if it mattered who rented the room. No, again, you're slipping off Judge Stahl's point. You've asserted he was there the whole night and the videotapes show two black men. And Judge Stahl has said that doesn't show one way or the other when your client went to the room. For all we know, he went there at 3 in the morning to smoke dope with the drug dealer. Except that it was undisputed that when he was getting up or when the officers were there a couple of times, they saw him in the back and he was getting dressed and the beds were just being made. So that evidence by preponderance suggests, it does more than suggest, by preponderance, which is all that's required at that stage, he has shown, I believe, he has shown the circumstance that when he says he was an overnight guest in moving papers. And so you want us to adopt the rule that merely being an overnight guest, regardless of your purpose, regardless of your relationship, is sufficient to establish a reasonable expectation of privacy. Just like in a home, but I don't like the use of the word merely being an overnight guest. When you said just merely being an overnight guest. Isn't that what you're arguing? Well, yes, but I don't think the word merely conveys that you are an overnight guest in a place where you're laying your head for the night. And I think that is sufficient without property concerns and who rented the place. I think being the overnight guest behind a locked door that you have a right to lock shows that you have a privacy concern. If he's there to do a drug deal, the government should prosecute him. And, you know, subject to the Fourth Amendment. It is. Subject to the Fourth Amendment, though. Privacy is privacy of privacy, and those courts that have required more have, well, things have started coming back to the basics of the Fourth Amendment with Judge Scalia's 2012 Jones decision talking about the common law and going back to trespass notions. Even with trespass notions of Fourth Amendment, my guy would be able to exclude the other people if he's there. So for all these reasons, I think the circumstances show that he's not a mere guest. He is an overnight guest. Whether we like his purpose or not, he's an overnight guest and the cops can't walk in without a warrant, which they did. So the government has an appeal, that part. So we know that happened. The only issue is does one guy get to say it? Now, don't take a really limited appeal. Thank you. This is quite true. Thank you. Thank you. So what's your response to Judge Thompson's point that the two men obviously knew each other well enough that he is permitted to stay however long he stayed that night in the motel room, and that suggests some sort of friendship? Well, I think that there are two responses. One, how they ended up in that room together is not clear from the record. Mr. Brown rented the room. It's entirely possible because the record is silent. That he sent Mr. Aiken there to assist Mr. Bonnet. And there is nothing in the record to the contrary. So it's possible that they do not have any sort of personal relationship, but they have a relationship that is predicated on a controlling person directing them. The second point that I would make is that this distinction between the registered occupant and — So wait a minute. So if he was sent there, you're saying that we should ignore the fact that whatever his purpose was, that he was nonetheless there? If it's a fair inference that he spent the night there? Well, I'm saying that the record is silent on whether he actually spent the night there, and I'm saying that the record is silent on how he ended up in that room. Well, is it silent or you don't like the inferences that the court drew below? I think that some of the district court's findings of fact were clouded by the affidavit that Mr. Bonnet submitted, which we view as having no weight whatsoever. But I think that regardless, even if you accept the district court findings of fact in the way most favorable, as we must in this situation, they don't support the legal conclusion that Mr. Aiken established a reasonable expectation of privacy. Every single Aguirre factor that this court has suggested that we consider cuts against Mr. Aiken in this case, he has no ownership. He doesn't have possession. He doesn't have control. He has no ability to regulate access, even his own, because he doesn't have a key. There's no record of historical use. There's nothing in the record to show his interest or purpose in being there. I'm sorry, he's behind a locked door? He can't open it or shut it? He can open it and exit, but he has no ability to get back in. But he can open it and control it from the inside. Theoretically, yes. Well, not theoretically. If there was a fire out in the room, you wouldn't say that he could open the door and depart. He could certainly depart. By controlling it from the inside, he had the ability to control who entered, other than one bearing a key. Well, I think the record in this case suggests that that may not be the case. Mr. Bonnet twice opened the door. Mr. Bonnet was... But that doesn't mean he disagreed with him opening the door. It just means Bonnet opened the door, and he could have opened the door also. I think the record is silent on that. Once again, is it a matter of what inferences are to be drawn from the record? Yes, but I think even taking the inferences as you're suggesting, and as Judge Levy found them, the defendant simply has not met his burden here. If he had left the room and the door had been closed, he could not have gotten back into the room unless somebody let him in. Correct. Okay, thank you both. It's a very interesting case conceptually. Can I just say one more thing? Yes. The person who rented the room rented it with one guest. Is that correct? Correct. So if Aiken had left and the name of the other guest was not recorded, is that correct? Yes, the name of Mr. Brown's guest. If he had gone to the front desk without a key, he could have said, I'm the other occupant in the room. I'm not sure, and again, the record is silent on this, I'm not sure what the hotel's policy would be with respect to issuing a key for a person whose name is not listed on the room. Typically, in my experience, they would only issue a key if the guest's name was listed. Thank you. Thank you. You go to fancier hotels.